IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMBER D. ZANELLA,<br>      Plaintiff,<br><br>v.<br><br>COMMISSIONER OF<br>SOCIAL SECURITY,<br>      Defendant. | )<br>)<br>)<br>)  Civil Action No. 06-1319<br>)<br>)<br>)<br>)<br>) |

REPORT AND RECOMMENDATION

I. Recommendation

It is respectfully recommended that the defendant's motion for summary judgment (Docket No. 14 ) be granted; that the decision of the Commissioner be affirmed and that judgment be entered accordingly.

II. Report

Presently before the Court for disposition are cross motions for summary judgment.

On October 18, 2006, Amber D. Zanella, by her counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g) for review of the Commissioner's final determination terminating her award of Supplemental Security Income benefits under Sections 1614 and 1631 of the Act, as amended, 42 U.S.C. §1381 cf.

The plaintiff filed an application for Supplemental Security Income Benefits on August 18, 1993 (R.44-47) and on April 28, 1994 benefits based on ADHD were awarded from August 1, 1993 (R.50-51). On November 19, 2003, the plaintiff was notified that her benefits

were terminated as of November 2003 (R.80-81). The plaintiff requested reconsideration of this determination, and on March 1, 2004 , continued benefits were again denied (R.83-104 ). On March 8, 2004, the plaintiff requested a hearing (R.105-106) and pursuant to that request a hearing was held on January 15, 2005 (R.674-694).  In a decision filed on May 20, 2005, an Administrative Law Judge denied continued benefits (R.13-25), and on May 11, 2005, the plaintiff requested reconsideration of that determination (R.11).  On August 18, 2006, the Appeals Council affirmed the prior determination (R.7-9).  The instant complaint was filed on October 18, 2006.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his/her burden of demonstrating that he/she was disabled within the meaning of the Social Security Act.  Richardson v. Perales, 402 U.S. 389 (1971); Adorno v. Shalala, 40 F.3d 43 (3d Cir. 1994).

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)." Richardson v. Perales, supra., at page 401; Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999).

The purpose of the Supplemental Security Income Program is to provide additional income to persons of limited resources who are aged, blind or disabled persons. 42 U.S.C. §1381; Chalmers v. Shalala, 23 F. 3d 752 (3d Cir. 1994). To be eligible for such benefits, an individual's income must not exceed a certain established maximum and he/she must fulfill certain eligibility requirements.

As set forth in 20 C.F.R. § 416.905(a) disability is defined as:

> the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

In addition, a person will be considered disabled if he/she is

> (a) ... permanently and totally disabled as defined under a State plan approved under title XIV or XVI of the Social Security Act, as in effect for October 1972; (b) ... received aid under the State plan ... for the month of December 1973 and for at least one month prior to July 1973; and © ... continue[s] to be disabled as defined under the State plan.

20 C.F.R. § 416.907.

A physical or mental impairment is defined in 20 C.F.R. §416.908 as an:

> impairment [which] result[s] from anatomical, physiological, or psychological abnormalities which [are demonstrated] by medically acceptable clinical and laboratory diagnostic techniques.

For purposes of determining whether or not the plaintiff met the eligibility requirements, certain evidence was considered by the Commissioner.

At the hearing held on January 14, 2005 (R.674-694), the plaintiff appeared with counsel (R.676) and testified that she was born on October 5, 1984 (R.678); that she graduated

high school in special education (R.678); that she worked for two weeks as a kitchen aide (R.686) and that she has no source of income (R.679).

The plaintiff also testified that she becomes nervous when she has too many orders to follow (R.678); that she experiences depression (R.687); that she has cut herself purposely several times (R.685-686); that she is being treated by a therapist (R.684); that her diabetes is controlled by diet (R.681-688); that she experiences right ankle and knee pain for which she takes Tylenol (R.682, 682); that she also suffers from occasional back pain (R.683) and that she can stand for about a half hour (R.684).

At the hearing a vocational expert was called upon to testify (R.689-693). He was asked to assume a person of the plaintiff's age and education who was limited to maximum lifting of twenty pounds, frequent lifting of ten pounds, and standing or walking for up to six hours a day, who had difficulty maintaining concentration and should be limited to simple, routine type work and he testified that such an individual could be gainfully employed (R.689-690). If that person's lifting was limited to ten pounds occasionally and five pounds frequently with standing and walking reduced to one hour, the witness again testified that there were a large number of jobs such a person could perform (R.690-692). However, the witness also testified that if such an individual needed to sleep during the work day, she would not be employable (R.692).

In addition, certain other evidence was considered.

The plaintiff was treated at the Irene Stacy community Mental Health Center between April 12, 1991 and January 6, 1992 for attention deficit hyperactivity disorder. Individual, family and peer group therapy were recommended (R.381-384).

4

In a report dated September 1993, the plaintiff's teacher reported that she participated in a regular education program with no time in special classes but that she was receiving reading remediation. It was also observed that although sometimes disruptive, since she had been on medication her ability to pay attention was good. Her Metropolitan Readiness scores were all average (R.137-145).

The plaintiff was treated at the Irene Stacy Community Mental Health Center between May 17, 1991 and October 29, 1993 for attention deficit hyperactivity disorder. She was treated with medication and improvement in school was noted (R.386-391).

In a teacher's report dated January 25, 1994, it is noted that the plaintiff is in regular education classes and receives remedial reading instruction; that she is easily distracted and has an attention problem, difficulty completing assignments and lacks responsibility (R.150-152).

In a report dated February 22, 1994, Dr. Shoukry Matta diagnosed attention deficit disorder and stated that the prognosis was good with counseling and medication (R.398-402).

In a functional assessment report completed on April 26, 1994, Roger L. Glover, Ph.D. diagnosed attention deficit hyperactivity disorder which substantially reduced the plaintiff's ability to function independently, appropriately and effectively (R.403-406).

On May 3, 1994, the Pennsylvania Bureau of Disability Determination concluded that the plaintiff was unable to function independently, appropriately and effectively (R.407-410). On January 11, 1996, the school district concluded that the plaintiff should participate in a regular education program with supplemental learning support (R.157-168).

On May 2, 1996, the school district determined to provide learning support and inclusion, that is, she was to receive regular education with appropriate modifications (R.169-185).

The plaintiff received treatment for acceptable social skills between December 19, 1995 and May 20, 1996 (R.257-258).

The plaintiff received opthalmologic treatment from Dr. Jerry Weissman between September 12, 1992 and May 7, 1997 (R.411-412).

The plaintiff was treated at the Pediatric Alliance between November 27, 1995 and May 9, 1997 for routine ailments and weight problems (R.420-431).

The plaintiff's school records for the periods from April 17, 1997 through May 12, 1997 note that the plaintiff's instruction is designed for the learning disabled (R.224-235).

In report of psychiatric evaluations conducted on April 21, 1997 and May 20, 1997, attention deficit hyperactivity disorder was noted and continued use of medication and therapy were recommended (R.413-419).

The plaintiff was treated at the Butler Memorial Hospital between June 16, 1995 and May 21, 1997 for obesity and leg pain. X-rays were normal (R.432-438).

The plaintiff was determined to meet the disability requirements on July 11, 1997 (R.440-443).

The plaintiff's school records for the period from October 24, 1996 through June 5, 1997 note that the plaintiff was receiving support in language arts within the regular classroom (R.236-255).

The plaintiff was routinely treated at Butler Pediatrics between April 8, 1997 and May 14, 1998 (R.444-454).

Psychiatric evaluations conducted at the Irene Stacy Community Mental Health Center between August 24, 1996 and November 16, 1998 diagnosed ADHD. Continued medication was ordered (R.455-461).

On January 22, 1999, the plaintiff's father reported that she "is getting better at dealing with life" (R.260-267).

The plaintiff was hospitalized at Children's Hospital between March 29, 1999 and April 3, 1999 following being hit by a car. She was treated for facial lacerations and an open right leg fracture which was surgically corrected (R.462-477, 601-606).

In a report of a psychological evaluation conducted on May 12, 1999, Martin Meyer, Ph.D. diagnosed ADHD. The prognosis was fair (R.478-482).

In a report of a medical review performed on June 19, 1999, no medical problems other than ADHD were noted (R.483-487).

The plaintiff was treated by Dr. William H. Ashbaugh between December 15, 2000 and September 12, 2002 for occasional cheek pain, leg cramps, dizzy spells, ear aches and leg problems. She was referred to physical therapy (R.488-501).

The plaintiff was hospitalized at Children's Hospital between March 7, 2000 and March 10, 2000 for non-union of her right tibial fracture. A pin was inserted (R.609-611).

The plaintiff was surgically treated at Children's Hospital on April 4, 2000 for facial scarring received in the accident a year previously (R.612-613).

The plaintiff was hospitalized at Children's Hospital between April 20, 2000 and April 27, 2000 for a non-union infection. She was treated surgically and medically (R.614-620).

The plaintiff was treated at the Butler Hospital Emergency room between June 20, 2002 and January 13, 2003 for low back pain for which x-rays were normal, and a left knee laceration which was cleaned and sutured (R.502-520).

The plaintiff was routinely treated by Dr. William H. Ashbaugh between August 28, 2002 and May 19, 2003 (R.521-525).

The plaintiff was treated by Dr. William H. Ashbaugh between August 9, 2003 and November 11, 2003 for a staff infection (R.570-573).

In a report of a clinical psychological evaluation conducted on August 13, 2003, Julie Uram, Ph.D. diagnosed ADHD and recurrent depression. She concluded that the plaintiff's prognosis was poor in terms of higher level functioning and that learning problems would continue (R.526-533).

In a report of an examination conducted on October 2, 2003, low back and right leg pain with some resultant activity limitations were noted. It was indicated that the plaintiff could occasionally lift ten pounds, stand or walk for an hour and sit for six hours (R.534-541).

In a residual mental functional capacity assessment completed on October 30, 2003 by Sanford Golin, Ph.D., the plaintiff's limitations were said to be not significant to moderate. It was concluded that she was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her [ADHD]" (R.542-559).

After reviewing the medical evidence and in residual functional capacity assessments completed on October 31, 2003 and November 12, 2003, it is noted that the plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, and stand, walk or sit for about six to eight hours (R.560-569).

The plaintiff's disability was determined to have ceased in November 2003 (R.72-77).

The plaintiff's records from the Butler Area High School for the period from 1999 through 2003 reveal that she earned mostly satisfactory grades. She received special training in institutional and restaurant work. Special educational support was terminated in June 2003 when she was scheduled to graduate (R.298-340).

In a report of a psychiatric evaluation conducted on April 13, 2004, Dr. C. Bryan Norton noted an improvement in the plaintiff's depression. No acute disturbance or distress were noted (R.642-646).

The plaintiff was treated by Dr. Elizabeth G. Bergman between January 6, 2004 and June 25, 2004 for diabetes (R.647-656).

The plaintiff was routinely treated by Dr. William H. Ashbaugh between July 9, 2000 and July 22, 2004. She was determined to be pregnant (R.588-593).

Based on the evidence presented, the Commissioner determined:

> The claimant is 20 years old. Born on October 5, 1984, she has been an "adult" since attaining age 18 in October 2002. The state agency initially found her to be under a disability ...
>
> On November 19, 2003, the state agency issued a cessation determination ... concluding that the claimant's disability ceased in November 2003, more than a year after she attained 18; hence, she

has been an "adult" throughout the relevant period from November 1, 2003 through the date of this decision ...

The issue is whether the claimant continues to be eligible for SSI disability payments under Title XVI of the Social Security Act ... or whether her disability has ceased, no longer exists, or is no longer disabling... I must apply the statutory and regulatory standards governing the adjudication of initial adult disability claims in deciding whether she has been disabled within the meaning of the Social Security Act at any time during the relevant period from November 1, 2003 through the date of this decision.

* * *

The psychiatric and psychological evidence of record consistently shows that the claimant has a diagnosed attention deficit/hyperactivity disorder, combined type, with recurrent major depression... With regard to her physical condition, the medical evidence of record establishes that she has undergone several surgical procedures for treatment of a spiral fracture of her right tibia and fibula, sustained when a motor vehicle struck her ... She was 14 years old at the time of the accident...

I find that the claimant's recurrent major depression, obesity, and residual pain stemming from the March 1999 spiral fracture ... are "severe" within the meaning of 20 C.F.R. 416.921, because they have caused more than minimal limitations of her ability to perform basic work activities ...

I find that the claimant's attention deficit/hyperactivity disorder (ADHD), combined type ... is not "severe" because it could not reasonably be expected to cause more than minimal limitations of her ability to perform basic work activities as an adult. She had significant problems related to ADHD during her childhood, but she has not been under prescribed treatment for the disorder since 1998... the claimant's cognitive functioning has remained intact, as consistently shown by the psychiatric and psychological findings... Moreover, by her own testimony she has matured into an artistically creative adult.

* * *

It is clear from the record that the claimant does not have major dysfunction of a weight-bearing joint .

\* \* \*

With regard to the claimant's mental functioning, she testified ... that she sometimes feels so depressed that she wants to stay in bed all day.  The record shows that her recurrent major depression was first diagnosed when she was seen for a consultative psychological evaluation ... on August 13, 2003.  Crediting that evaluation, which indicated that the claimant appeared to be suffering from low self-esteem with feelings of worthlessness and unresolved guilt, I find that her diagnosed major depressive disorder could be construed as satisfying the preamble of Listing 12.04.  However, her psychiatric treatment records ... show that her mood and overall mental functioning greatly improved and stabilized after her involvement in an abusive relationship ended in November 2003. Her mental status has further improved in response to individual psychotherapy and prescribed treatment with ... medication...  In addition, she has greatly benefitted from regular organizational assistance provided to her by a resource coordinator...

 Based upon my review and evaluation of the entire body of written evidence and the hearing testimony, I find that the claimant lacks the mental signs and symptoms specified in part A of the Listing ... and that she has had no more than mild to moderate limitations.

\* \* \*

After considering the hearing testimony and the entire record and assigning appropriate weight to the medical, psychiatric and psychological evidence ...  I find that throughout the relevant period from November 1, 2003 through the date of this decision, she has had the residual functional capacity to perform sedentary work... within the following parameters: she can sit for a total of six hours per day; she can stand for thirty minutes without interruption; but she is limited to a cumulative maximum of one hour of standing per eight-hour day; she can occasionally walk a quarter of a mile, but she is limited to a cumulative maximum of one hour of walking per eight-hour day; she cannot be exposed to unprotected heights; she is limited to occasional bending, stooping, lifting, carrying, crawling, crouching, balancing and/or climbing; her mental impairments limit her to simple, routine work entailing no more than occasional interaction with others; she cannot perform jobs that would require her to maintain a fast pace or meet production goals ... and she can handle no more than occasional contact with the general public.

\* \* \*

> Thus, considering the claimant's age, education, lack of work experience and residual functional capacity, crediting the vocational expert's opinion ..  I find ... that the claimant has remained functionally capable of making a successful vocational adjustment through the relevant period from November 1, 2003 through the date of this decision.  Consequently, she was not a disabled adult... (R.16-24).

The evidence reveals that while as a juvenile the plaintiff was considered disabled, as an adult and evaluated under the adult standards, there are a wide range of gainful activities in which she can engage, consistent with her mental and physical requirements. For this reason, the decision of the Commissioner is supported by substantial evidence.

Summary judgment is appropriate where there are no material factual issues in dispute and the movant is entitled to judgment as a matter of law.  <u>Biener v. Calio</u>, 361 F.3d 206 (3d Cir.2004).  In the instant case there are no material issues of fact in dispute, and the findings of the Commissioner are supported by substantial evidence. For this reason, it is recommended that the defendant's motion for summary judgment be granted, and that the decision of the Commissioner be affirmed.

Within ten days after being served with a copy, any party may serve and file written objections to the report and recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

    Respectfully submitted,

    s/ROBERT C. MITCHELL,
    United States Magistrate Judge

Date: April 16, 2007